```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


BRIAN M. ALLEN                              CIVIL ACTION

VERSUS                                      NO: 13-233

VALERY HOWARD, ET AL                        SECTION: "J" (5)
```

**ORDER & REASONS**

Before the Court is the Jefferson Parish District Attorney ("JPDA")'s **Motion to Dismiss pursuant to FRCP 12(b)(6) (Rec. Doc. 27)** and Plaintiff Brian Allen's opposition thereto (Rec. Doc. 34).[1] Also before the Court is the State of Louisiana though the Department of Children and Family Services ("DCFS")'s **Motion to Dismiss (Rec. Doc. 32)**. DCFS's motion is unopposed by Plaintiff. The motions are set for May 21, 2014, with oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motions should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

**FACTS AND PROCEDURAL BACKGROUND**

As the Court noted at the hearing held in this matter on May 14, 2014, Plaintiff's complaint is written in a narrative fashion

---

[1] Defendant Valery Howard also joins in the motions of JPDA and DCFS. (Rec. Doc. 52)

1

and presents a rambling, incoherent recitation of the events leading up to the instant suit. It appears, however, that at least the basic factual background can be patched together from the complaint. Defendant Valery Howard is the mother of a minor child who she alleged was fathered by Plaintiff Brian Allen. Plaintiff submitted to a paternity test, and the blood sample was processed by LabCorp. It was determined with 99.99% certainty that Plaintiff was the minor child's biological father, and Plaintiff was ordered to pay child support. It appears that when the initial determination regarding child support was made, Plaintiff resided in California; however, when he re-located to Louisiana, Defendant Howard registered the child support order in Louisiana. Plaintiff apparently did not make support payments as required, and at some point, and seemingly multiple times, Plaintiff was order to show cause why he should not be held in contempt in the 24th Judicial District for the State of Louisiana before Juvenile Court Judge Ann Keller. Consequently, he was jailed over three times, allegedly under La. R.S. §§ 14:74-75, for failure to make support payments. Plaintiff alleges that the paternity test is incorrect and based on faulty grounds and that the lab and the various defendants have conspired to create false paternity claims and inflate payments made to the government based on child support collections, all in violation of his rights.

    Plaintiff filed a *pro se qui tam* action in this Court on

February 7, 2013. The government notified the Court and the Plaintiff that it declined to intervene in this matter on October 21, 2013, and, thereafter, the complaint was unsealed and the defendants were served. Kenneth Plaisance enrolled as counsel of record for the Plaintiff on February 26, 2014. Pursuant to a motion to dismiss, the Court dismissed defendant Judge Ann Keller, and shortly after that order, DCFS and JPDA filed motions to dismiss. Plaintiff then filed a motion for summary judgment and two motions to amend his complaint. Due to the numerous filings by all parties, the Court held a hearing on May 14, 2014. Early on the day of the hearing, Plaintiff's counsel informed the Court that he would not be in attendance because he was in the emergency room due to medical issues.  At the hearing, the Court issued an order to Plaintiff's counsel to show cause regarding both his absence and certain issues concerning candor to the Court.  The Court also denied the motions for leave to file amended complaints, ordered the Plaintiff to file a new, concise complaint within 21 days, dismissed the pending motion for summary judgment, and set the instant motions to dismiss for oral argument on May 21, 2014. (Rec. Doc. 52)[2]

---

[2] Note that the motions were scheduled for oral argument on May 21, 2014, but because counsel for Plaintiff did not appear due to a medical problem, the Court only considered the motions on the written submissions of counsel. At the hearing, the Court briefly announced its rulings in open court, and these written reasons further explain the Court's rulings.

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

**PARTIES' ARGUMENTS & DISCUSSION**

**I. JPDA's Motion to Dismiss**

JPDA advances several arguments in support of their Motion to Dismiss, all of which are discussed below. Plaintiff submits several arguments in opposition to the motion; however, before proceeding to summarize those arguments, the Court notes that Plaintiff spends a large portion of his opposition challenging the appropriateness of the plausibility pleading standard set forth in *Twombly* and *Iqbal* and argues that his claim cannot be dismissed if it is even remotely possible that it is true. As *Twombly* and *Iqbal* are now well accepted law, the Court will abide by the Supreme Court's rulings in those cases despite Plaintiff's apparent dissatisfaction with the plausibility standard. Therefore, Plaintiff's argument that this Court should accept any allegations, regardless of how far-fetched and/or nondescript those arguments are, fails, and the Court will dismiss any claims that do not meet the standard described in *Twombly* and *Iqbal*.

**A. False Claims Act Claim under 31 U.S.C. § 3729**

The False Claims Act creates liability for any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

> (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;
>
> (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;
>
> (F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C.A. § 3729 (West).

JPDA argues that Plaintiff's False Claims Act claim fails because he does not specify the nature of the claim, how it is false, or how it caused the government to pay or forfeit money. JPDA explains its understanding of Plaintiff's false claims act claim as follows:

> Plaintiff is alleging that the basis of the false claim is a false genetic test performed in the State of California, when the plaintiff was a resident of Alameda County California. The complaint claims that the test was fraudulent because the protocols underlying the test began with a scientifically unwarranted presumption that there is a fifty percent likelihood that the plaintiff is the father of the child. This, according to the plaintiff, is an erroneous presupposition of fatherhood. He cites his professional knowledge as a "scientist" as the basis of his claim of falsity. Based on this claim, the plaintiff constructs a theory that the defendants

>  conspired to defraud the United States of moneys that it pays to the State and to the District Attorney for administering the programs that establish paternity and child support collection. The plaintiff alleges that the defendants conspired to falsely establish paternity of this child and others in order to inflate its figures in order for the defendants to collect moneys they would not otherwise be entitled to.

(Rec. Doc. 27-1, pps. 16-17)

JPDA argues that this claim is not only implausible, but is ludicrous.  Accordingly, because there is only a minuscule chance that Plaintiff could ever provide admissible evidence to support his claim, it should be dismissed.

Plaintiff does not dispute JPDA's characterization of his claim. He asserts that by making this claim, he has taken a novel approach to asserting his rights, and that if we accept the JPDA's arguments, we are depriving him of his right to make novel arguments. Further, he asserts that a motion for summary judgment is the more proper method resolving this claim.

The Court agrees with JPDA that Plaintiff's allegations do not state a plausible claim for relief under that False Claims Act. The allegations to do not identify a "claim;" therefore, there is not a cognizable cause of action. *See U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 813 (E.D. Tex. 2008) ("the FCA does not create a cause of action for *all* fraudulent conduct affecting the government. Rather, the fundamental element of an alleged FCA violation is a false or fraudulent claim that is submitted to the government.")(internal citation omitted).

7

Accordingly, this claim will be dismissed.

### B. 42 U.S.C. § 1983 Claim

"To pursue a claim under § 1983, a plaintiff [ ] must (1) allege a violation of *rights* secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008)(internal citations omitted). JPDA argues that Plaintiff's 1983 claim fails because it is not predicated on a cognizable constitutional right. Each constitutional right invoked by Plaintiff is outlined below.

#### 1. Fourth Amendment Violation

Plaintiff alleges that his Fourth Amendment right to privacy was violated by the taking of his bodily fluids for paternity testings. JPDA argues that this claim fails because, under the Fourth Amendment, search and seizure is allowed when there is an important state interest and the intrusion is reasonable in scope. Federal courts have held that drug testing, for example, is allowed when the government has a compelling reason for the intrusion and the testing is reasonable. *Beharry v. M.T.A. New York City Transit Authority,* 96-1203, 1999 WL 151671, *aff'd sub nom Beharry v. Metro Transit Auth., New York City Transit*, 242 F.3d 364 (2d. Cir 2000). Further, in a paternity testing case, the Louisiana Supreme Court, relying heavily on federal jurisprudence, held that "[a]lthough the

alleged father has a right to privacy and to be free from unreasonable searches and seizures, those rights are not absolute and may be reasonably regulated when the State has a sufficiently weighty interest. In this case, the State has a compelling interest because of its pervasive concern for the welfare of its children." *In Interest of J.M.*, 590 So. 2d 565, 568 (La. 1991)(internal citations omitted).

In his opposition, Plaintiff distinguishes the cases to which JPDA cites, noting that they dealt with drug testing for safety-sensitive jobs and with testing for intoxication while driving. Plaintiff argues that the government interest in those situations is much more compelling than in the instant matter. Further, Plaintiff attempts to distinguish *In the Interest of J.M.* by noting that *J.M.* involved blood testing and this matter involves DNA testing, which the Court notes is a meaningless distinction, as the DNA testing is a blood test.

JPDA's arguments have merit, and Plaintiff's attempts to distinguish the cases cited fail. DNA testing for paternity is not unreasonably invasive in light of the compelling state interest to protect the welfare of children. Therefore, Plaintiff's § 1983 claims based on a Fourth Amendment violation must be dismissed.

    **2. Fourteenth Amendment Equal Protection/Substantive Due Process Violations**

Plaintiff appears to allege that he has been denied substantive due process and the equal protection of the law. He bases these

claims on the allegations that women have a unilateral right to choose to have the child or to not have the child, and that men must go along with that decision without any right to participate in the decision-making process. As a result, men are often forced to pay child support for eighteen years based on the woman's decision. (Rec. Doc. 1, ¶¶ 41, 42) He further alleges that his due process rights are violated based on the differing burdens of proof and presumptions applied in determining maternity and paternity as set forth in La. Civ. Code Arts. 178-198. Finally, in his opposition, he contends that the period of time in which a man may prove paternity is too short, making it unconstitutional.

JPDA contends that the substantive due process argument fails based on the reasoning set forth in *N.E. v. Hedges*, 391 F.3d 832 (6th Cir. 2004) wherein the Sixth Circuit held that paternity and child support laws are not inconsistent with the rights to procreative privacy because such rights do not exist after the child is born. *Hedges*, 391 F.3d at 834-36. Further, JPDA argues that Plaintiff's challenges to the codal articles dealing with maternity and paternity are meritless based on *Rivera v. Minnich*, 483 U.S. 574 (1987) wherein the Supreme Court found that different burdens are not only permissible, but preferred.

As to Plaintiff's equal protection argument, JPDA argues that child support statutes are gender neutral because they apply to both men and women, and under rational basis review, any disparate

treatment serves the legitimate governmental purpose of providing for the welfare of Louisiana's children. *Dubay v. Wells*, 506 F.3d 422,430 (6th Cir. 2007)

Plaintiff contends that *Hedges* and *Dubay* cannot be relied on in this Circuit because the Sixth Circuit is a more liberal forum. Plaintiff further cites to *Mills v. Habluetzel*, 456 U.S. 91 (1982), wherein the Supreme Court found that Texas' one year statute of limitations was unconstitutional, to support his contention that Louisiana's prescriptive periods on the actions for filiation and disavowal are too short and therefore are unconstitutional. *See also*, *Pickett v. Brown* 462 U.S. 1 (1983) (Tennessee's two-year statute of limitation was unconstitutional.)

Though *Hedges* and *Dubay* are not binding on this Court, Plaintiff does not point to any Fifth Circuit authority that is contrary to either *Hedges* or *Dubay*. Further, the Court finds that the opinions are both well-reasoned and persuasive, and opts to follow the Sixth Circuit's reasoning. *See Dubay,* 506 F.3d at 430 (equal protection clause is not violated because the statutes are gender neutral and because the statutes serve a legitimate government interest); *Hedges*, 391 F.3d at 834-36 (fundamental right to privacy in regards to procreation is not implicated after the child is born, thus there is no substantive due process issue when

11

a father seeks to avoid support obligations).[3] Accordingly, Plaintiff's § 1983 claims based on substantive dues process and equal protection violations must be dismissed.

### 3. Thirteenth Amendment/ Section 3 of the Louisiana Constitution

Plaintiff invokes the protection of the Thirteenth Amendment and Section 3 of the Louisiana Constitution based on his contention that the State and District Attorney's ability to incarcerate a father, report a father to the IRS, and garnish his wages for failing to pay child support essentially enslaves him until he complies with an ill-begotten judgment. JPDA argues that such a claim is completely meritless as the Thirteenth Amendment does not encompass theoretical "slavery." The Thirteenth Amendment only pertains to labor or services that are involuntary. *Brooks v. George County, Miss.*, 84 F.3d 157, 162 (5th Cir. 1996). "Involuntary" is defined as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Watson v. Graves,* 909 F.2d 1549, 1552 (5th Cir.1990). "When the employee has a choice, even though it is a painful one, there is no involuntary servitude ... A showing of compulsion is

---

[3] The Court further notes that the filiation and disavowal prescriptive periods found in the Louisiana Civil Code are not relevant to the instant matter because filiation was not achieved through those codal articles, nor does it appear that a disavowal action was ever filed. Rather, the applicable law in this matter is found in Louisiana's Revised Statutes concerning child support payments. La. R.S. § 9:399. Those provisions provide a framework for challenging the paternity test, and such challenges belong in state court. La. R.S. § 9:399.1.

thus a prerequisite to proof of involuntary servitude." *Id.* at 162. JPDA argues that Plaintiff's allegations do not meet this standard, as Plaintiff had the choice to be released by paying the money he owed and that Plaintiff's attempt to invoke this Amendment is an offense to the memory of those who actually were enslaved.

Plaintiff contends that the Thirteenth Amendment applies because it is improper to put someone in jail for not paying a debt and because contempt remedies are intended to apply to force someone to do something that they are able but unwilling to do. Here, he was simply unable to pay due to lack of funds.

The Court again finds that JPDA's contentions have merit; accordingly, Plaintiff's § 1983 claims based on a Thirteenth Amendment violation, as well as any allegations of violations of Section Three of the Louisiana Constitution must be dismissed.

**4. Title VI Claim**

JPDA mentions, in passing, that Plaintiff attempts to state a claim under 42 U.S.C. § 2000e *et seq*. ("Title VII").[4] However, it appears that the only similar claim that Plaintiff attempts to make is one under 42 U.S.C. § 2000d, *et seq*. ("Title VI"). Title VI prohibits various forms of discrimination, including gender discrimination, in programs and activities that receive financial assistance. 42 U.S.C. § 2000d. Plaintiff's allegations fall far

---

[4] JPDA mentions a Title VII claim in passing in its motion, but does not provide any substantive briefing, and Plaintiff did not address Title VII in his opposition (Rec. Doc. 27, p. 1)

13

short of alleging gender discrimination because, as is noted above, the support requirements in Louisiana apply to both men and women, thus are gender neutral. Therefore, this claim must be dismissed.

### 5. Sixth Amendment/Fourteenth Amendment Right to Counsel

Plaintiff alleges that these rights were violated when he was not provided counsel prior to being incarcerated for failure to pay child support. JPDA argues that the Supreme Court held in 2011 that: (1) the Sixth Amendment does not apply to civil cases, and (2) that the Fourteenth Amendment does not automatically require appointment of counsel "at civil contempt proceedings to an indigent noncustodial parent who is subject to a child support order, even if the individual faces incarceration." *Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011). Under the Fourteenth Amendment, it need only be ensured that certain safeguards are provided, such as "adequate notice of the importance of the ability to pay, fair opportunity to present, and to dispute, relevant information and court findings," and these things were present in this case. *Id.*

Plaintiff alleges that *Turner* is inapposite because he was convicted under a criminal statute, and, indeed, it has been recognized in the past that La. R.S. §§ 14:74-75 are hybrid civil/criminal statutes that sometimes carry the right to counsel. *State v. Broussard*, 490 So.2d 273 (La. 1986). It is very unclear to the Court, however, whether Plaintiff was sentenced under the criminal statutes cited above, and whether those statutes carry a

right to counsel.  As this issue was not extensively briefed, and because oral argument could not be held due to Plaintiff's counsel's absence, the Court  issued an order allowing the parties to submit additional briefing and evidence on this issue. (Rec. Doc. 57) Therefore, the Court will defer ruling on this issue until such briefing is received.

**II. DCFS's Motion to Dismiss**

DCFS argues that, as an arm of the State of Louisiana, it is entitled to sovereign immunity and is not a person capable of being sued under the False Claims Act or under § 1983. *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787-88 (state agency not subject to False Claims Act); *Menard v. Bd. of Trustees of Loyola Univ. of New Orleans*, No. 03-2199, 2004 WL 856641 (E.D. La. Apr. 19, 2004)(state agency is not a person within the meaning of § 1983)  Plaintiff did not oppose this motion, and it appears that it has merit; therefore, the motion to dismiss should be granted.

Accordingly,

**IT IS ORDERED** that DCFS's Motion to Dismiss is **GRANTED**. Plaintiff's claims against the State of Louisiana through the Department of Children and Family Services are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that JPDA's Motion to Dismiss is **GRANTED IN PART.**

15

**IT IS FURTHER ORDERED** that Plaintiff's claims against JPDA and Valery Howard under the False Claims Act and under 42 U.S.C. § 2000d *et seq.* are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against JPDA and Valery Howard under 42 U.S.C. § 1983 that are predicated on violations of the Fourteenth Amendment's Equal Protection Clause and Substantive Due Process Clause, the Fourth Amendment, or the Thirteenth Amendment are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against JPDA and Valery Howard under 42 U.S.C. § 1983 that are predicated on violations of the Sixth and/or Fourteenth Amendment Right to Counsel are taken under advisement pending further briefing from the parties. (Rec. Doc. 57)

New Orleans, Louisiana this 21st day of May, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE