UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BRIAN M. ALLEN                        CIVIL ACTION

VERSUS                                NO: 13-233

VALERY HOWARD, ET AL                  SECTION: "J" (5)



**ORDER & REASONS**

This matter arises from numerous claims by Mr. Allen, all of
which are based on a state court child support order and its
subsequent enforcement. At various times in litigation, the Court
has dismissed several parties and claims from this matter, leaving
only the Jefferson Parish District Attorney ("JPDA") and Valery
Howard ("Ms. Howard") as defendants, and leaving only the issue of
whether Mr. Allen was deprived of his right to counsel during the
state court proceedings. (Rec. Docs. 58, 61) Following an in-court
hearing on May 21, 2014,[1] the Court allowed the parties fourteen
days to submit supplemental briefing on two issues: (1) whether Mr.
Allen had a Sixth and/or Fourteenth Amendment right to counsel
before being incarcerated in connection with his obligation to make
child support payments to Ms. Howard; and (2) if there was a right

---

[1]The Court intend to hold oral argument on that day, but counsel for Mr.
Allen was unable to attend for medical reasons. Therefore, the Court did not
hold oral argument, but rather orally read its findings as to certain other
claims and deferred ruling on the right to counsel issue.

1

to counsel, what are the implications of that right, including, but not limited to, what Mr. Allen's remedies would be and who the proper defendant to such a claim would be. (Rec. Doc. 57) The Court further requested that the parties submit any evidence that would aid the Court in understanding the factual context of Mr. Allen's case in state court. (Rec. Doc. 57)

Before the Court now are Mr. Allen's supplemental brief (Rec. Doc. 67) and a joint brief by JPDA and Ms. Howard (Rec. Doc. 65) that are responsive to the Court's order. Having considered the original motion and the supplemental memoranda of counsel, the record, and the applicable law, the Court finds that Mr. Allen's remaining claims should be dismissed for the reasons set forth more fully below.

### A. Right to Counsel

The Court will first address whether Mr. Allen had a right to counsel during the state court proceedings at issue. This question requires us to first determine whether Mr. Allen was incarcerated under civil or criminal statutes. *Turner v. Rogers*, 131 S.Ct. 2507, 2516 (2011)(Sixth Amendment applies in criminal proceedings, but the Fourteenth Amendment applies in civil proceedings).

### 1. Criminal or Civil Proceeding

Due to both the rambling nature of Plaintiff's complaint and the admittedly confusing state level procedure, it was initially difficult for the Court to determine whether Mr. Allen was

incarcerated pursuant to a criminal statute, La. R.S. 14:75, or for civil contempt under civil child support statutes. Upon further explanation by JPDA and a review of the exhibits filed in connection with the instant briefing, it has become clear that Mr. Allen was incarcerated for civil contempt. In support of his allegation that he was charged under criminal statutes, Mr. Allen relies heavily on "Disposition of Inmate Request" forms from the Jefferson Parish Correctional Center ("Correctional Center") that indicate his "charge" as being either "CCRP 21," which is the criminal procedure rule for direct contempt, or "Contempt 14:74," which is that statute covering criminal neglect of the family. (Rec. Doc. 67-1, pps. 2, 5) Further review of these documents, however, indicates that the criminal provisions were cited to by the Correctional Center through error or ignorance to the current state of the law.[2] In fact, there are several errors on the sheets, ranging from grammatical errors to substantive errors. (Rec. Doc. 67-1, pps. 2, 5) While the Court does not condone such reckless procedures, the internal deficiencies of the Correctional Center are not grounds for finding that Mr. Allen was incarcerated under criminal statutes when it is clear that he was not. Criminal statutes were never referenced in the trial court documents

---

[2] JPDA explains that the criminal statutes were used in Jefferson Parish until the mid-1980s, but have not been used since. The Correctional Center, however, appears to continue to use relics of the former system when coding charges on internal documents. (Rec. Doc. 64, pps. 1-2)

submitted to the court, and, in fact, the civil statutes applicable to this case were referenced at the first hearing with the hearing officer. (Rec. Doc. 64-7, p. 1) Further, as the case proceeded, it was made abundantly clear that Mr. Allen could avoid incarceration by making "purge payments," which is a hallmark of civil, rather than criminal, contempt. (Rec. Docs. 64-7 -- 64-24); *see also Turner*, 131 S.Ct. at 2516. Therefore, the Fourteenth Amendment will apply.

## 2. Right to counsel in civil proceedings to enforce child support obligations?

In *Turner v. Rogers*, the United States Supreme Court squarely addressed whether indigent, non-custodial parents have a right to counsel in civil child support enforcement proceedings that may lead to incarceration where the party seeking payment is an unrepresented custodial parent. *Id*. at 2520. Therefore, *Turner* will apply to this case.

*Turner* does not require appointment of counsel in all cases. The Court held that Due Process "does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards." *Id.* Such "safeguards" include,

> notice to the defendant that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about

4

his financial status, (*e.g.,* those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.

*Id.* at 2519. It is clear that this list is illustrative, as the court later refers to these safeguards or their "equivalent." *Id.* at 2520.

In the instant matter, Mr. Allen appears to have been sentenced to several periods of incarceration ranging from sixty to ninety days per sentence in January 2009, April 2009, September 2011, October 2012, and May 2013.[3] In January 2009, the Court expressly found that he was voluntarily unemployed and imposed a 60-day sentence. (Rec. Doc. 64-10) In April 2009, the Court imposed another 60-day sentence, but made no specific findings as to ability to pay. (Rec. Doc. 64-12) In September 2012, the Court again imposed a 90-day sentence while making no specific finding as to the ability to pay. (Rec. Doc. 64-18) In October 2012, the Court made more extensive findings. It found that Mr. Allen was underemployed and adopted the hearing officer's findings which stated that Mr. Allen has no disability preventing him from working and that he had the ability to comply with the support orders. (Rec. Docs. 64-19, 64-21) In May 2013, the Court imposed another 90-day sentence, again expressly finding that Mr. Allen was unemployed. (Rec. Doc. 64-23) Prior to the May hearing, the hearing

---

[3] It is somewhat unclear whether all of the sentences were actually served, and which sentences were served in full, though it is certain that he did spend some time in jail.

officer made the same findings as it had made prior, notably that Mr. Allen had the ability to comply with the support order. (Rec. Doc. 64-22) Finally, in January 2014, in the face of yet another sentence, Mr. Allen made a payment and notified the Court that he had found employment, at which time the Court ordered that his wages be garnished. (Rec. Doc. 64-24)

Based on these facts, the Court is satisfied that, even before *Turner* applied,[4] its requirements were likely satisfied. Mr. Allen was never arbitrarily put in jail.  He was always afforded a hearing with the hearing officer. The hearing officer would make his recommendation, and the Mr. Allen, and Ms. Howard as well, had the opportunity to consent to the recommendation or to oppose it. When it was opposed, as it often was, a hearing would be set in front of the juvenile court judge. Further, when it was recommended that Mr. Allen be incarcerated, he always had the chance to come in and pay the amount, and sometimes he did. It was only after multiple chances to pay that he would go before the juvenile court judge to have a sentence imposed. Further, after *Turner* was decided, the court's records have become much more thorough, which indicates to this Court that Jefferson Parish has made all attempts to keep abreast of proper constitutional procedures and is currently operating in a constitutional manner. In each court appearance after 2011, the hearing officer, the court, or both,

---

[4] *Turner* was decided in June 2011.

indicated to Mr. Allen that they expressly found that he was able to pay.  This decision was based on income and expense forms filled out by Mr. Allen and his testimony before the hearing officer and the court. (Rec. Doc. 64-24). Mr. Allen had multiple opportunities to be heard in each instance. Therefore, the Court  finds that the state court procedures were constitutional.

### 3. Mootness of Mr. Allen's Claim

Even if there ever was a constitutional violation, in light of the clearly constitutional procedures in place following *Turner*, the Court does not find that it is it not reasonably likely to recur, thereby rendering this action moot. *DeFunis v. Odegaard*, 416 U.S. 312, 318, 94 S. Ct. 1704, 1707, 40 L. Ed. 2d 164 (1974)("a voluntary cessation of the [conduct] complained of could make this case moot only if it could be said with assurance 'that 'there is no reasonable expectation that the wrong will be repeated.") In *Turner*, the Court held that the action was not moot because, given the fact that the plaintiff consistently missed child support payments and would almost certainly be back in court again, there was a "reasonable" likelihood that Turner will again be "subjected to the same action." *Turner*, 131 S. Ct. at  2515. This instant matter is distinguishable from *Turner* because, though it may be likely given Mr. Allen's history that he will have to return to court again, Jefferson Parish has supplied proof that it is continually updating its procedures to comply with *Turner*.

7

Therefore, even if Mr. Allen does have to return to Court, he will not be "subjected to the same action." Therefore, this action is moot.

## B. Proper Party and Remedy

The Court also ordered briefing addressing who should be named as a party to this action and to what remedies the Plaintiff is entitled. Though neither of the briefs submitted provided much assistance,[5] the Court finds that, even if Mr. Allen had a right to counsel, and even if his action were not moot, Plaintiff has not provided any authority. showing that JPDA and Ms. Howard-the only remaining defendants- may be held liable for violating any right to counsel that he may have had. Without further persuasion, the Court simply cannot find that JPDA-an entity that had no role in appointing counsel-has any liability for violating a plaintiff's right to counsel.[6] Moreover, even if liability did exist, Plaintiff has not indicated what his remedy would be.[7]

---

[5] Defendants reliance on *Heck v. Humphrey*, 512 U.S. 477 (1994) is without merit. *Heck* applies to matters where a petitioner seeks to challenge his conviction. Mr. Allen is not challenging his conviction in this claim; rather, he is asserting that he had a right to counsel. In fact, based on JPDA's contention that Mr. Allen was not prosecuted under a criminal statute, he does not even have a "conviction" to overturn.

[6] For obvious reasons, Mr. Allen clearly has no claim against Defendant Howard, the mother to whom support is paid in this matter.

[7] Pursuant to a motion to dismiss, the Court dismissed Mr. Allen's §1983 suit against Judge Keller finding that she is immune to suit in her official capacity based on sovereign immunity. The Court specifically found that the *Ex Parte Young* doctrine did not apply because Plaintiff sought money damages and did not seek "to enjoin state officials to conform their future conduct to the requirements of federal law." (Rec. Doc. 26, p. 9) Upon further review of the complaint, the Court finds that it overlooked Plaintiff's claim for prospective injunctive relief, likely because the complaint was rambling and

Accordingly,

**IT IS ORDERED** that Plaintiff's remaining claims against JPDA and Valery Howard that are based on a violation of his Sixth and Fourteenth Amendment rights to counsel are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 5th day of June, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

incoherent. However, even though injunctive relief against Judge Keller was a possibility that should have been considered, the Court finds that such a claim would nonetheless be dismissed as moot for the reasons stated above.